IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Michael Anthony Sarratt | ) | Case No. 8:14-00138-RBH-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Larry Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 21.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on January 13, 2014.[1]  [Doc. 1.]  On March 17, 2014, Petitioner filed additional attachments to the Petition, including a memorandum detailing his grounds for habeas relief titled "Petitioner's Memorandum of Law." [Doc. 12.]   On June 4, 2014, Respondent filed a motion for summary judgment and a return and memorandum.  [Docs. 21, 22.]  On June 5, 2014, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  Accordingly, this action was filed on January 13, 2014.  [Doc. 1-2 (envelope marked as received by prison mailroom on January 13, 2014).]

respond to the motion.  [Doc. 23.]  Petitioner filed a response in opposition on July 2, 2014.  [Doc. 27.]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted.

## BACKGROUND

Petitioner is incarcerated in the Perry Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Greenville County.  [Doc. 1 at 1.]  Petitioner was indicted in May 2005 for murder, carjacking, and possession of a weapon during the commission of a crime.  [App. 757–60.[2]]  On June 11, 2007, represented by Elisabeth Wiygul ("Wiygul") and Lawrence Crane, Petitioner proceeded to trial.  [App. 1–614.]  On June 14, 2007, the jury returned a verdict of guilty on all charges.  [App. 609–10.]  Petitioner was sentenced to 50 years imprisonment for murder, 30 years imprisonment for carjacking, and 5 years imprisonment for possession of a weapon during the commission of a crime, all sentences to run concurrent.  [App. 614; Doc. 1 at 1.]

**Direct Appeal**

Petitioner appealed his conviction.  On December 4, 2008, Joseph L. Savitz, III, ("Savitz") of the South Carolina Commission on Indigent Defense filed an *Anders*[3] brief on Petitioner's behalf in the South Carolina Court of Appeals, raising the following issue:

---

[2]The Appendix can be found at Docket Entry Numbers 22-1 through 22-5.

[3]A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

2

> The trial judge committed reversible error in violation of *Rule 403, SCRE*, by denying a mistrial where the State stressed repeatedly that, at the time of the incident, Sarratt had "outstanding warrants" for "two charges of lynching, assault and battery with intent to kill and possession of a weapon during a violent crime."

[Doc. 22-6 at 4.] At the same time he filed the *Anders* brief, Savitz submitted a petition to be relieved as counsel. [Doc. 22-6 at 8.] Petitioner filed a pro se brief raising the following issues:[4]

Issue 1:     Appellant was denied his Fifth Amendment rights when he chose not to testify at trial but evidence of his character was still allowed in through the testimony of Amanda Inman ("Inman"), William Joe Phillips ("Phillips"), Anna McDaniel ("McDaniel"), and Peggy Gladfelter ("Gladfelter").

1(a)     Trial counsel was ineffective for making a deal with the prosecutor that warrants outstanding at the time of the commission of the crimes for which Petitioner was on trial could be brought up at trial but that the specific charges could not. Further, trial counsel failed to object when Inman testified that Appellant had pending charges. Trial counsel also placed Appellant's "character before the jury" by asking Inman about Appellant's pending charges on cross-examination. Trial counsel failed to object to the prosecutor's questioning of Phillips regarding Appellant's outstanding warrants. Trial counsel was ineffective during the cross-examination of McDaniel when she asked McDaniel about Appellant's pending charges. Trial counsel poisoned the minds of the jury by intentionally placing Appellant's character and criminal history before the jury.

1(b)     The prosecutor committed misconduct by asking Inman, Phillips, and McDaniel about Appellant's pending charges. The prosecutor poisoned the minds of the jury by intentionally placing Appellant's character and criminal history before the jury.

1(c)     The trial judge erred in failing to rule when trial counsel objected to McDaniel's response and by failing to give a curative instruction

---

[4]Petitioner's pro se brief is lengthy and repetitive. Accordingly, the Court construes it as alleging the following issues and sub-issues.

regarding her testimony.  The trial judge also erred in failing to grant a mistrial after Gladfelter's testimony poisoned the minds of the jury.

Issue 2:    The trial judge erred in failing to dispose of numerous pro-se pre-trial motions; therefore, Appellant was denied his due process and equal protection rights.  The trial judge violated *Brady* and *Bagley* by failing to look into or locate Gladfelter's mental health records. As a result of the trial judge's error, Appellant was not provided with material evidence to impeach Gladfelter and, accordingly, he was denied the right to a fair trial.

Issue 3:    Appellant's mental health records were placed before the court as evidence in violation of Supreme Court precedent and Appellant's Fifth Amendment right against self-incrimination.

3(a)    Trial counsel erred in placing Appellant's mental health records before the court as evidence.

3(b)    The prosecutor erred in placing Appellant's mental health records before the court as evidence.

3(c)    The trial judge erred in placing Appellant's mental health records before the court as evidence.

[Doc. 22-8 at 4–11.]  On January 27, 2010, the South Carolina Court of Appeals dismissed Petitioner's appeal and granted counsel's motion to be relieved.  [Doc. 22-9.]  Remittitur was issued on February 12, 2010.  [Doc. 22-10.]

**First PCR Application**

On May 5, 2010, Petitioner filed a pro se application for post-conviction relief ("PCR"), in which he alleged he was being held in custody unlawfully based on the following grounds: "Judicial Error, subjectmatter Jurisdiction[,] constitutional violations[,]

4

prosecutorial misconduct, ineffective assistance of counsel." [App. 617.]  In Petitioner's

"Attachment to Question Ten (10)," Petitioner presented the following sixteen grounds:[5]

Issue 1:  The trial court lacked subject matter jurisdiction.  Indictment Nos. 2005-GS-23-4106 and 2005-GS-23-4108 were obtained through "sham legal process that failed to confer subject matter jurisdiction upon the trial court."  Under South Carolina Code § 14-5-670(a), "[t]he court of general sessions for [Greenville County] shall be held at Greenville the first Monday in May for two weeks."  Accordingly, Applicant's indictments dated May 24, 2005, were not before a properly convened grand jury.

Issue 2:  Applicant's conviction should be set aside because the Thirteenth Circuit Solicitor's Office "systematically employs practices discouraged by the S.C. Supreme Court."  In grand jury proceedings, the Solicitor's Office uses a "designated court officer, who typically did not participate in the investigation, to present summary, hearsay testimony."  In Applicant's case, his indictments were signed by "someone who appears to be Woods," when no one named Woods worked on his case.  The Supreme Court of South Carolina has already prohibited allowing prosecutors to be the sole witness before the grand jury and this rule should be extended to police officers.

Issue 3:  Under Rule 3(c)(1), of South Carolina Rules of Criminal Procedure, "within (90) ninety days after receipt of an arrest warrant from the Clerk of court, the solicitor shall take action on the warrant by preparing an indictment for presentment to the grand jury, which indictment shall be filed by the clerk of court, assigned a criminal case number and presented to the grand jury."  Applicant's indictments were never filed with the clerk of court for Greenville County, and, accordingly, the court lacked jurisdiction.

3(a)  Trial counsel was ineffective for failing to challenge the indictments when they were never properly filed.

3(b)  The prosecutor committed misconduct by violating Rule 3(c)(1).  The prosecutor's actions violated Applicant's constitutional rights by denying him due process and equal protection and by presenting insufficient indictments before the grand jury.

---

[5]Petitioner's PCR application is lengthy and repetitive.  Accordingly, the Court construes it as alleging the following.

Issue 4:      Applicant was never charged with possession of a weapon during the commission of a crime dated January 3, 2005. Applicant's arrest warrant dates the crime as occurring on January 25, 2005; however, Applicant's indictment lists the date as January 3, 2005.

    4(a)    Because trial counsel was ineffective, Applicant was convicted of a crime with which he was never charged.

    4(b)    As a result of prosecutorial misconduct, Applicant was convicted of a crime with which he was never charged.

Issue 5:      Applicant was never provided a bond hearing and, as a result, his due process and equal protection rights were violated.

    5(a)    Trial counsel was ineffective. Applicant went through three attorneys and none of them assisted Applicant in securing a bond hearing.

    5(b)    The prosecutor committed misconduct because, as an arm of the State, the prosecutor has a duty to ensure that a criminal defendant receives all of his constitutional rights.

Issue 6:      Applicant had 32 pending motions before the court before the beginning of trial.

    6(a)    Trial counsel was ineffective for failing to object to the start of trial when she knew that Applicant had pending motions.

    6(b)    The trial judge committed judicial error after telling Applicant that they were going to handle the motions and failing to do so.

Issue 7:      Applicant was denied his Fifth Amendment rights when he chose not to testify at trial but evidence of his character was still allowed in through the testimony of Inman, Phillips, McDaniel, and Gladfelter.

    7(a)    Trial counsel was ineffective for making a deal with the prosecutor that warrants outstanding at the time of the commission of the crimes for which Petitioner was on trial could be brought up at trial but that the specific charges could not. Further, trial counsel failed to object when Inman testified that Applicant had pending charges. Trial counsel also placed Applicant "character before the jury" by asking Inman about Applicant' pending charges on cross-examination. Trial counsel failed to object to the prosecutor's questioning of Phillips about Applicant's outstanding warrants. Trial counsel was ineffective during the cross-examination of McDaniel when she asked McDaniel about Applicant's pending charges. Trial counsel poisoned the minds

6

of the jury by intentionally placing Applicant's character and criminal history before the jury.

7(b)    The prosecutor committed misconduct by asking Inman, Phillips, and McDaniel about Applicant's pending charges.   The prosecutor poisoned the minds of the jury by intentionally placing Applicant's character and criminal history before the jury.

7(c)    The trial judge erred in failing to rule when trial counsel objected to McDaniel's response and by failing to give a curative instruction regarding her testimony.  Trial judge also erred in failing to grant a mistrial after Gladfelter's testimony poisoned the minds of the jury.

Issue 8:    Applicant was denied effective assistance of trial counsel because trial counsel failed to investigate evidence in the possession of the prosecutor and law enforcement.  At trial, the prosecutor sought to introduce damaging photographs of which trial counsel had been unaware.  If she had properly investigated, trial counsel would have known about the photographs.  Trial counsel's ineffective assistance denied Applicant the right to a fair trial.

Issue 9:    The prosecutor "presented numerous knives before the jury that were irrelevant to the case."  The knives misled the jury into thinking that they were looking at murder weapons.  The knives prejudiced the Applicant's right to a fair trial.

9(a)    Trial counsel was ineffective because she objected to the knives and then withdrew her objection before the trial judge could rule on the issue.  As a result, Petitioner was denied the right to a fair trial and due process.

9(b)    The prosecutor committed misconduct by presenting the knives before the jury when evidence proved they were not linked to the murder.  As a result, Petitioner was denied the right to a fair trial and due process.

Issue 10:    Applicant was denied effective assistance of trial counsel because trial counsel failed to object to State's exhibits 16–25, 36–37, 45–51, and 52–58.   These exhibits lacked a proper chain of custody.  Accordingly, Applicant was prejudiced and denied the right to a fair trial.

Issue 11:    Applicant was denied the effective assistance of trial counsel as a result of trial counsel's failure to investigate.  Applicant's right hand was severely fractured at the time of the murder; however, trial

7

counsel failed to investigate whether the victim's injuries were caused by a right or left handed person. Trial counsel also failed to have an expert examine the autopsy. Applicant's right to a fair trial was denied because trial counsel could not put on a full defense.

Issue 12:    Before trial, Applicant requested copies of "the medical records of, Leroy Eugene Frey, Jr., Leroy Frey Jr. And Leroy Frey from the counties of Gettysburg, Thomasville, York Haven, Hanover, and all near by counties in the state of Pennsylvania." These medical records showed that Applicant had a severely fracture right hand at the time of the murder and were material evidence.

12(a)    Trial counsel was ineffective for failing to investigate and locate the medical records. Trial counsel also failed to obtain testimony from medical personnel in Pennsylvania. Because Applicant was denied access to his medical records, trial counsel violated the confrontation and compulsory process clauses of the Sixth Amendment and his conviction must be vacated and the case remanded to determine if a new trial is necessary.

12(b)    The prosecutor violated his *Brady* obligations by failing to provide evidence that would have been favorable to the defense. Because Applicant was denied access to his medical records, the prosecutor violated the confrontation and compulsory process clauses of the Sixth Amendment and his conviction must be vacated and the case remanded to determine if a new trial is necessary.

12(c)    Because Applicant was denied access to his medical records, the trial court violated the confrontation and compulsory process clauses of the Sixth Amendment and his conviction must be vacated and the case remanded to determine if a new trial is necessary.

Issue 13:    Video evidence existed that would have shown the jury that Gladfelter and Wesley Smith ("Smith"), the lead investigator, gave perjured testimony at trial. The video from the Spinx showed that Applicant was never at the Spinx where he allegedly got a ride from the victim before the victim was carjacked and murdered.

13(a)    Trial counsel was ineffective for failing to fully investigate the State's files and evidence and all prior statements. As a result, the State was able to suppress material evidence that could have affected the outcome of the trial.

8

13(b)  The prosecutor violated his *Brady* obligations by failing to disclose favorable evidence to the defense.  Further, the prosecutor knowingly used Gladfelter's and Smith's perjured testimony.

Issue 14:  Applicant made a Rule Five *Brady* motion through trial counsel.  He also made pro se motions requesting the mental health and disability records of Gladfelter to be used to attack her credibility on cross-examination.   Gladfelter was the State's key witness and her credibility was important to the outcome of the trial.

14(a)  Trial counsel was ineffective for failing to investigate and locate Gladfelter's mental health records which allowed the prosecution to present Gladfelter as truthful.  Accordingly, Applicant wad denied the right to confront and properly cross-examine Gladfelter.

14(b)  The prosecutor violated her *Brady* obligations in that she did not turn over exculpatory evidence or notify opposing counsel that no such evidence existed.  As a result, Applicant was denied the right to a fair trial and the right to confront the witness against him.

14(c)  The trial judge erred in failing to look into or locate Gladfelter's mental health records "as he claimed he would."

Issue 15:  Trial counsel was ineffective for failing to impeach Gladfelter on the stand with her prior statements.  Gladfelter had given previous statements to law enforcement in Arizona and South Carolina that she had not seen Applicant with a knife around the time of the confrontation with the victim, she had not seen Applicant stab the victim, and she had not seen Applicant with the victim's personal property after the confrontation.  At trial, Gladfelter testified that she had seen Applicant stab the victim and saw Applicant with the victim's wallet after the confrontation.  Trial counsel's failure to challenge Gladfelter with her prior inconsistent statements prejudiced Applicant's right to a fair trial.

Issue 16:  Applicant was denied the effective assistance of trial counsel because trial counsel failed to investigate the chain of custody for a 1991 maroon Plymouth Acclaim sedan with a South Carolina license plate.  As a result, the State presented harmful evidence obtained through a serious violation of the Fourth Amendment.  Through his own investigation, Applicant discovered that the search warrant for the car was fabricated.   Applicant argues that State's exhibits 1, 26–32, 38–41, 62, 64–90, and 94–99 are "poisonous branches from a poisonous tree."  If trial counsel had conducted a proper investigation, she would have seen there was a serious Fourth Amendment issue.

9

[App. 622–87.]  The State filed a return on September 16, 2010.  [App. 698–701.]

An evidentiary hearing concerning the application was held on May 11, 2011, at which Petitioner was represented by Rodney Richey.   [App. 704–46.]  On July 20, 2011, the PCR court issued an order denying and dismissing the PCR application with prejudice. [App. 748–56.]

A notice of appeal was timely filed.  On May 23, 2012, David Alexander of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf a petition for writ of certiorari in the Supreme Court of South Carolina asserting the following as the sole issue presented:

> Whether trial counsel was ineffective in withdrawing her objection to the admission into evidence of knives that had no relation to the crime charged?

[Doc. 22-11 at 3.]  The court denied the petition on August 22, 2013 [Doc. 22-13] and remitted the matter to the lower court on September 9, 2013 [Doc. 22-14].

**Second PCR Application**

Petitioner filed a second pro se PCR application, dated September 9, 2013. [Doc. 22-15.]  The PCR court construed Petitioner's application and subsequent amendments alleging the following grounds for relief:

> 1 .  "Trial counsel was ineffective for failing to object to the sentence of Fifty (50) years that was handed down by the court . . . there are only three penalties for murder under §16-3-20(A), death, life, or mandatory Thirty Years."
> 2.  "Trial counsel was ineffective by failing to file a Notice of Appeal for a New Trial after being instructed by Applicant who desired to appeal."
> 3.  Trial counsel was ineffective for failing to challenge the indictments and the Court's jurisdiction.

4.  The court lacked jurisdiction because Applicant was never served with an arrest warrant on the weapons possession charge.

5.  Trial counsel was ineffective for not conducting thorough discovery.

6.  Trial counsel was ineffective for failing to call a witness to stipulate to the fact that Applicant's hand was broken at the time the crime occurred.

7.  Trial counsel failed to present the "extenuating and extraordinary circumstances" surrounding the victim's death.

8.  Trial counsel was ineffective for withholding evidence of undue influence held by the State over its key witness, Peggy Gladfelter.

\*\*\*

9.  Trial counsel was ineffective for failing to negotiate a plea agreement.

10. Trial counsel was ineffective for failing to have Applicant's mental competency evaluated.

\*\*\*

11. "Rule of 'Duplicity' prohibits the simultaneous charging of several distinct, unrelated crimes in one indictment."

12. Trial counsel was ineffective for "failure to investigate the vehicle that was obtained by Investigator Dar Shaw and returned to the victims wife, to determine its actual condition compared to the statements of state witnesses, William Joe Phillips and Peggy L. Gladfelter."

\*\*\*

13. Ineffective assistance of appellate counsel.

14. Ineffective assistance of PCR counsel.[6]

[Doc. 22-17 at 4–5 (footnote added).]

---

[6]Respondent provided a copy of Petitioner's second PCR Application at Docket Entry No. 22-15; however, the record before this Court does not appear to include a copy of any of the amendments.

The State filed a return and motion to dismiss on March 11, 2014. [Doc. 22-16.] On March 13, 2014, the PCR court filed a conditional order of dismissal, finding Petitioner's second PCR application was subject to summary dismissal because (1) the application was filed outside the one-year statute of limitations applicable to PCR filed in South Carolina courts and (2) the application was successive to Petitioner's first PCR application. [Doc. 22-17 at 5–7.] Petitioner filed a response to the motion to dismiss on March 21, 2014, [Doc. 22-18] and a response to the conditional order of dismissal on April 30, 2014 [Doc. 22-19].

On July 22, 2014, the PCR court filed a final order of dismissal.[7] [Doc. 31-2.] Upon reviewing Petitioner's responses to the conditional order and Petitioner's original pleadings, the court determined Petitioner had not demonstrated a sufficient reason why the conditional order should not become final. [*Id.* at 2.] Accordingly, the PCR court denied Petitioner's second PCR application and dismissed the action with prejudice. [*Id.* at 3.]

Petitioner served a notice of appeal and motion for appointment of counsel on the Attorney General on July 28, 2014 [Doc. 31 at 2] and filed the same motions with the Greenville County Clerk of Court on August 13, 2014 [Doc. 31-1 at 1–3]. However, Petitioner failed to file the notice with the Supreme Court of South Carolina. *See* Rule 203 (d)(1)(A),SCACR (requiring filing with the county clerk and the appellate court); Rule 243, SCACR (governing certiorari review of PCR actions and providing that the Supreme Court of South Carolina shall review all appeals from PCR actions unless transferred to the Court

---

[7]On November 21, 2014, the undersigned directed Respondent to provide an update on the status of Petitioner's second PCR application. [Doc. 29.] On November 25, 2014, Respondent filed a status report, including the PCR court's final order of dismissal and Petitioner's notice of appeal. [Doc. 31.]

of Appeals).  Respondent's counsel reports that by telephone inquiry on November 24,

2014, the Clerk's Office of the Supreme Court of South Carolina confirmed that the notice

was not filed in the appellate court.[8]  [Doc. 31.]

**Petition for Writ of Habeas Corpus**

As previously stated, Petitioner filed the Petition on January 13, 2014.  [Doc. 1.] In

his Petition, Petitioner raises the following grounds for relief, quoted substantially verbatim:

**Ground One**:      Sixth Amendment Violations

*Supporting Facts*:  Ineffective Assistance of Trial Counsel,[9] Appellate counsel, denial of confrontation and compulsory process.

**Ground Two**:      Fourth Amendment Violations

*Supporting Facts*:  Illegal search and seizure, arrest and conviction without an arrest warrant.

**Ground Three**:    Fourteenth Amendment violations

*Supporting Facts*:  Denial of Due Process of Laws and Equal Protection of Laws.

**Ground Four**:     Ineffective Assistance of PCR Counsel

*Supporting Facts*:  Failure to amend PCR application, failure to obtain case file from prior attorney(s), failure to investigate, failure to subpoena records or favorable witnesses.

---

[8]On December 2, 2014, the undersigned directed Petitioner to file a brief response to the status report by December 22, 2014, addressing whether Petitioner filed a notice of appeal with the Supreme Court of South Carolina.  [Doc. 32]  To date, no response has been received.

[9]Although Petitioner was represented at trial by two attorneys, his PCR application and Petition appear to allege ineffective assistance of trial counsel only against Wiygul. [*E.g.*, Doc. 1 at 12 (listing only Elizabeth Wiygul as trial counsel); *see* Doc. 12, App. 621–87 (referring to trial counsel as "she" and "her" throughout Petitioner's PCR application and his memorandum).]

[Doc. 1.]  In his attachment titled "Petitioner's Memorandum of Law," Petitioner alleges

nine issues.  [Doc. 12.]  A closer review of the attachment, however, reveals that sub-

issues were raised under each issue.  Accordingly, liberally construing Petitioner's filings,

the Court treats the Petition and attachment together as alleging the following grounds for

relief:[10]

> Ground 1:    Trial counsel was ineffective in withdrawing her objection to the admission of Plaintiff's knives into evidence when the knives were not related to the crime charged and only served to confuse the jury.  Trial counsel initially objected to the introduction of the knives; however, the next morning, she withdrew her objection.  At the PCR hearing, trial counsel conceded that the admission of the knives was "a big issue" and could not provide a strategic reason for her decision.

> Ground 2:    Evidence of Plaintiff's other pending warrants for "two charges of lynching, assault and battery with intent to kill and possession of a weapon during a violent crime" was improperly introduced at trial.

>> 2(a):    Trial counsel was ineffective for failing to object when witness McDaniel stated that Petitioner had outstanding warrants for "my same charges."

>> 2(b)    The prosecutor committed prosecutorial misconduct by eliciting information on Plaintiff's specific charges from witnesses in front of the jury when all parties had agreed that the prosecutor could inquire into the fact that Plaintiff had outstanding warrants at the time of the crimes for which he was on trial but could not inquire into the specific charges contained in the warrants.

>> 2(c)    The trial judge erred by denying a mistrial where character evidence was admitted in violation of Rules 403 and 404, SCRE, and Petitioner's Fifth, Sixth, and Fourteenth Amendment rights when Petitioner chose not to take the stand in order to preserve his character.

> Ground 3:    Video evidence was suppressed from the Spinx store showing that Petitioner was never at the Spinx where he allegedly met the victim

---

[10]Petitioner's Petition is lengthy and repetitive.  Accordingly, the Court construes it as alleging the following.

and got a ride from the victim.  If this video had been presented, it would have proved that the State's witnesses, Gladfelter and Smith, gave perjured testimony.  This evidence was material and could have altered the outcome of the case.

3(a)    Trial counsel was ineffective for failing to fully investigate the State's evidence and all prior statements.  Her failure to properly investigate allowed the State to withhold material evidence and present perjured testimony.

3(b)    The prosecutor committed prosecutorial misconduct by failing to disclose material evidence in violation of *Brady*.

3(c)    Appellate counsel erred by failing to preserve this issue in his writ of certiorari to the Supreme Court of South Carolina.

Ground 4:    The State used evidence obtained by an illegal search and seizure to convict Petitioner.  The State failed to present a sufficient chain of custody for the victim's car.  Additionally, evidence obtained from the car was the result of a fabricated search warrant.  The evidence presented at trial, including blood evidence, was fruit of the poisonous tree and should not have been introduced.

4(a)    Trial counsel was ineffective for failing to conduct a reasonable investigation and check the chain of custody.

4(b)    Appellate counsel erred by failing to preserve this issue in his writ of certiorari to the Supreme Court of South Carolina.

Ground 5:    Petitioner was denied his right to confront the witnesses against him because he was not provided with Gladfelter's mental health records. The mental health records would have allowed Petitioner to properly cross-examine Gladfelter and would have allowed him to impeach her and attack her credibility

5(a)    Trial counsel was ineffective for failing to investigate and locate Gladfelter's mental health records.

5(b)    The prosecutor committed prosecutorial misconduct and violated his *Brady* obligations by withholding the mental health records of his key witness.  The prosecutor refused to turn over the records to protect Gladfelter's character and secure a conviction.

15

5(c)    The trial judge erred in failing to look into the matter of Gladfelter's mental health records after stating that he would. This infringed upon Petitioner's right to a fair trial.

5(d)    PCR counsel was ineffective for failing to assist Petitioner in obtaining Gladfelter's mental health records to present before the PCR court.

5(e)    Appellate counsel was ineffective by failing to preserve this issue in his writ of certiorari to the Supreme Court of South Carolina.

Ground 6:    Gladfelter's testimony at trial was inconsistent with her prior statements. Before trial, Gladfelter gave a statement to detectives K. Kelly and F. Pacheco, of the Tucson Police Department, that when Petitioner confronted the victim, Gladfelter had not seen a knife and did not see Petitioner stab the victim with a knife. Further, she stated that she had not seen Petitioner with any of the victim's property after the confrontation. At trial, Gladfelter testified that she had seen Petitioner stabbing the victim and that she saw Petitioner with the victim's wallet after the confrontation.

6(a)    Trial counsel was ineffective for failing to impeach Gladfelter when trial counsel knew that Gladfelter had made prior inconsistent statements. As a result, a key witness was able to give false testimony before the jury, which seriously harmed the defense.

6(b)    Appellate counsel was ineffective in failing to preserve this issue in his writ of certiorari to the Supreme Court of South Carolina.

Ground 7:    Petitioner filed a motion to obtain "the medical records of Leroy Eugene Frey, Jr., Leroy Frey, Jr. and Leroy Frey from the counties of Gettysburg, Thomasville, York Haven, York, Hanover and all near by counties in the state of Pennsylvania." Petitioner had used these names to receive medical treatment for a broken right hand between December 16, 2004 and January 1, 2005. Had this evidence been presented at trial, it would have shown that Petitioner had a severely fractured right hand at the time of the victim's murder and, accordingly, he could not have committed the crime.

7(a)    Trial counsel was ineffective for failing to investigate and locate Petitioner's medical records and failure to subpoena medical personnel to testify at trial. Further, trial counsel could not properly defend Petitioner when an argument about his hand arose at trial.

7(b)    The prosecutor violated his *Brady* obligations by failing to provide evidence that was favorable to the defense.

16

7(c)    The trial court erred in denying Petitioner access to his updated medical records.

Ground 8:    An expert should have been retained to examine the victim's autopsy report.  Because Petitioner had a severely broken right hand, it was important to determine whether the victim was stabbed by a right-handed or left-handed person.

8(a)    Trial counsel was ineffective for failing to have an expert examine the autopsy report.  Trial counsel was not able to put on a proper defense and support Petitioner's argument that he could not have committed the crime because his hand was severely fractured.  Because trial counsel failed to obtain evidence, Petitioner was denied his right to a fair trial.

8(b)    Appellate counsel was ineffective in failing to preserve this issue in his writ of certiorari to the Supreme Court of South Carolina.

Ground 9:    PCR counsel was ineffective for failing to preserve thirteen issues not presented in the original PCR application.  As a result, Plaintiff had to file a second PCR application in Greenville County, South Carolina.

[Docs. 1, 12.]

As stated, on June 4, 2014, Respondent filed a motion for summary judgment. [Doc. 21.]  On July 2, 2014, Petitioner filed a response in opposition.  [Doc. 27.]  On November 25, 2014, Respondent filed a status report updating the Court on the disposition of Petitioner's second PCR application.  [Doc. 31]  Petitioner did not file a response. Accordingly, Respondent's motion is ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less

17

stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition still may be subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the

18

non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

> ***Generally***

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

20

*Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions.  28

U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the

Constitution or laws or treaties of the United States" and requires that a petitioner present

his claim to the state's highest court with authority to decide the issue before the federal

court will consider the claim.  *Id.*  The separate but related theories of exhaustion and

procedural bypass operate to require a habeas petitioner to first submit his claims for relief

to the state courts.  A habeas corpus petition filed in this Court before the petitioner has

appropriately exhausted available state-court remedies or has otherwise bypassed seeking

relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and

provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a
> State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies
>> available in the courts of the State; or
>>
>> (B)    (I) there is an absence of available State
>> corrective process; or
>>
>>> (ii) circumstances exist that render such
>>> process ineffective to protect the rights of
>>> the applicant.
>
> (2) An application for a writ of habeas corpus may be
> denied on the merits, notwithstanding the failure of the
> applicant to exhaust the remedies available in the
> courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the Supreme Court of South Carolina. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[11] Further, strict time deadlines govern direct appeal and the filing

---

[11]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant

of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal

must be filed and served on all respondents within ten days after the sentence is imposed

or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R.

203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if

there is an appeal, within one year of the appellate court decision.  S.C. Code Ann.

§ 17-27-45(A).

　　　　If any avenue of state relief is still available, the petitioner must proceed through the

state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson*

*v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173

(4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present

only those issues that were presented to the highest South Carolina court through direct

appeal or through an appeal from the denial of a PCR application, regardless of whether

the court actually reached the merits of the claim.  *See State v. McKennedy*, 559 S.E.2d

850, 854 (S.C. 2002) (reiterating that discretionary review by the Supreme Court of South

Carolina is not required to exhaust available state court remedies: "[South Carolina] has

identified the petition for discretionary review to [the Supreme Court of South Carolina] in

criminal and post-conviction cases as *outside* South Carolina's standard review process.

In [the Supreme Court of South Carolina's] 1990 order, th[e] Court stated that petitions for

rehearing and certiorari following an adverse Court of Appeals' decision are not required

in order to exhaust all available state remedies." (emphasis in original) (citing *In re*

---

to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which
there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure
to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

> *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

25

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96.  A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel.  *Id.* at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default.  *Carrier*, 477 U.S. at 492.  To show actual prejudice, the petitioner must demonstrate more than plain error.  *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice.  To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent.  *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent").  Actual innocence is defined as factual innocence, not legal innocence.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  To meet this actual innocence standard, the petitioner's case must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

26

**DISCUSSION**

**Non-Cognizable Claims**

In Grounds 5(d) and 9, Petitioner raises claims of ineffective assistance of PCR counsel. [Doc. 12 at 19–26, 34–35.] However, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(I); *see also Martinez*, 132 S. Ct. at 1315, 1320 (stating that, "while § 2254(I) precludes [a petitioner] from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief,' it does not stop [a petitioner] from using it to establish 'cause'" and holding that a petitioner may establish cause for defaulting an ineffective assistance of trial counsel claim by demonstrating his postconviction attorney was ineffective). Therefore, Petitioner is not entitled to federal habeas relief as to these grounds because they are not cognizable federal habeas claims.[12]

**Procedurally Barred Claims**

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996). If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Here, Respondent contends many of the grounds raised in the Petition and attachments are procedurally barred. [Doc. 22.] Petitioner argues he can

---

[12]The Court has construed Grounds 3(c), 4(b), 5(e), 6(b), and 8(b), as raising ineffective assistance of counsel claims with respect to counsel on direct appeal. To the extent that Petitioner is alleging ineffective assistance of PCR appellate counsel, those claims are not cognizable federal habeas claims.

establish cause for any procedurally barred claims of ineffective assistance of trial counsel under *Martinez*, 132 S.Ct. 1309. [Doc. 27.] The Court agrees some grounds are procedurally barred.

### Grounds Not Presented to the Supreme Court of South Carolina in Petitioner's Petition for Writ of Certiorari

The following grounds are procedurally barred because they were not presented to the Supreme Court of South Carolina in Petitioner's petition for writ of certiorari [*see* Doc. 22-11 at 3]:

2(a)    Trial counsel was ineffective for failing to object when witness McDaniel stated that Petitioner had outstanding warrants for "my same charges."[13]

3(a)    Trial counsel was ineffective for failing to fully investigate the state's evidence and all prior statements. Her failure to properly investigate allowed the State to withhold material evidence and present perjured testimony.

3(c)    Appellate counsel erred by failing to preserve this issue in his writ of certiorari to the Supreme Court of South Carolina.

4(a)    Trial counsel was ineffective for failing to conduct a reasonable investigation and check the chain of custody.

4(b)    Appellate counsel erred by failing to preserve this issue in his writ of certiorari to the Supreme Court of South Carolina.

5(a)    Trial counsel was ineffective for failing to investigate and locate Gladfelter's mental health records.

5(e)    Appellate counsel was ineffective by failing to preserve this issue in his writ of certiorari to the Supreme Court of South Carolina.

---

[13]Petitioner raised Ground 2(a) in his pro se direct appeal; however, Petitioner raised the ground incorrectly. *See State v. Kornahrens*, 350 S.E.2d 180, 184 (S.C. 1986) ("[Ineffective assistance of trial counsel] is not appropriate for review on direct appeal, and may be asserted only in proceedings under the Post-Conviction Procedure Act") (*citing* S.C. Code Ann. §§ 17-27-10 through 120).

6(a)    Trial counsel was ineffective for failing to impeach Gladfelter when trial counsel knew that Gladfelter had made prior inconsistent statements. As a result, a key witness was able to give false testimony before the jury, which seriously harmed the defense.

6(b)    Appellate counsel was ineffective in failing to preserve this issue in his writ of certiorari to the Supreme Court of South Carolina.

7(a)    Trial counsel was ineffective for failing to investigate and locate Petitioner's medical records and failure to subpoena medical personnel to testify at trial. Further, trial counsel could not properly defend Petitioner when an argument about his hand arose at trial.

8(a)    Trial counsel was ineffective for failing to have an expert examine the autopsy report. Trial counsel was not able to put on proper defense and support Petitioner's argument that he could not have committed the crime because is hand was broken. Because trial counsel failed to obtain evidence, Petitioner was denied his right to a fair trial.

8(b)    Appellate counsel was ineffective in failing to preserve this issue in his writ of certiorari to the Supreme Court of South Carolina.

Because these grounds were not fairly presented to the Supreme Court of South Carolina, they are procedurally barred from federal habeas review absent a showing of cause and actual prejudice. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### *Grounds Not Raised on Direct Appeal*

The following grounds are procedurally barred as direct claims because they were never raised on direct appeal [*see* Docs. 226- at 4; 22-8 at 4–11]:

3(b)    The prosecutor committed prosecutorial misconduct by failing to disclose material evidence in violation of *Brady*.

5(b)    The prosecutor committed prosecutorial misconduct and violated his *Brady* obligations by withholding the mental health records of his key witness. The

prosecutor refused to turn over the records to protect Gladfelter's character and secure a conviction.

7(b)    The prosecutor violated his *Brady* obligations by failing to provide evidence that was favorable to the defense.[14]

7(c)    The trial court erred in denying Petitioner access to his updated medical records.[15]

Because these claims were not presented on direct appeal, they are procedurally barred from federal habeas review absent a showing of cause and prejudice.

### Cause and Prejudice

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Carrier*, 477 U.S. at 488. *But see Martinez*, 132 S. Ct. at 1315 ("Inadequate assistance of counsel at *initial-review* collateral proceedings *may* establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." (emphasis added)).  Here, as stated, Petitioner appears to argue he can establish cause for any procedurally barred claims of ineffective assistance of trial counsel under *Martinez*.

In *Martinez*, the Supreme Court held,

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral

_____

[14]Further, with regard to Grounds 3(b), 5(b), and 7(b), Petitioner's claims of prosecutorial misconduct are not a cognizable claim in PCR in South Carolina. *Drayton v. Evatt*, 430 S.E.2d 517, 520 (S.C. 1993) ("PCR is not a substitute for appeal or a place for asserting errors for the first time which could have been reviewed on direct appeal."); S.C. Code Ann. § 17–27–20(b).  Petitioner also failed to raise these grounds in his PCR appeal.

[15]Petitioner also failed to bring this claim in his PCR appeal.

> proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318. Accordingly, Petitioner may establish cause for the defaulted grounds if he demonstrates that (1) his PCR counsel was ineffective and (2) the underlying ineffective assistance of trial counsel claim is a substantial one, i.e., it has some merit.

With respect to the grounds found to be procedurally barred for failure to raise them to the Supreme Court of South Carolina in Petitioner's writ of certiorari, Petitioner has failed to establish cause. The *Martinez* exception does not extend to PCR appellate counsel. *See e.g., Crowe v. Cartledge*, No. 9:13–CV–2391-DCN, 2014 WL 2990493 at *6 (D.S.C. July 2, 2014) ("[I]neffective assistance of PCR appellate counsel is not cause for a default."); *Cross v. Stevenson*, No. 1:11–CV–02874-RBH, 2013 WL 1207067 at *3 (D.S.C. Mar. 25, 2013) ("*Martinez*, however, does not hold that the ineffective assistance of counsel in a PCR appeal establishes cause for a procedural default."). The Supreme Court expressly noted that its holding in *Martinez* "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Martinez*, 132 S.Ct. at 1320. Therefore, Petitioner has not demonstrated

cause for not raising these issues in his petition for writ of certiorari, and these grounds are procedurally defaulted.

With respect to Petitioner's argument regarding Grounds 3(b), 5(b), 7(b), and 7(c), *Martinez* does not apply because these are not ineffective assistance of counsel claims. Moreover, Petitioner has failed to allege he can establish cause for the procedural default. Accordingly, Petitioner has not established cause with respect to these claims. Therefore, the above-listed grounds are barred from federal habeas review.

**Merits of Remaining Claims**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

### Ground 1

In Ground One, Petitioner argues trial counsel was ineffective for withdrawing her objection to the admission of knives belonging to Petitioner into evidence at trial and failing to provide an explanation for her decision at the PCR hearing.  [Doc. 12 at 1–3.]  The Court concludes Petitioner is not entitled to federal habeas corpus relief based upon this allegation.

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is

33

whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[16]  *Richter*, 131 S.Ct. at 785.  "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself."  *Id.*; *see also  Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas").  Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent.  *Id.*

Here, the PCR court addressed Wiygul's performance under the standard set forth in *Strickland*.  [App. 750.]  The PCR court found,

---

[16]In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 692.  The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

34

the Applicant failed to meet his burden of proving trial counsel should have moved to suppress the State's introduction of various knives. The Applicant claims trial counsel was ineffective in initially objecting to the admission of this evidence and then later withdrawing that objection before the trial judge ruled upon their admissibility. While trial counsel could not recall why she withdrew her objection, this Court finds it would be a strategic call that—under the circumstances of this case—would be objectively reasonable. This Court finds that, regardless, the Applicant has failed to prove he suffered any prejudice as a result of trial counsel's action in light of the overwhelming evidence of guilt. See Franklin v. Catoe, 346 S.C. 563, 570 n. 3, 552 S.E.2d 718, 722 n. 3 (2001) (finding overwhelming evidence of guilt negated any claims that counsel's deficient performance could have reasonably affected the result of defendant's trial); Geter v. State, 305 S.C. 365, 367, 409 S.E.2d 344, 346 (1991) (concluding reasonable probability of a different result does not exist when there is overwhelming evidence of guilt).

[*Id.* at 754 (citation omitted).]  The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  The PCR court noted the overwhelming evidence of guilt and concluded that Petitioner failed to establish that he would have prevailed at trial had these issues been presented; and, accordingly, Petitioner cannot prove that he was prejudiced as a result of trial counsel's representation.  The record supports the PCR court's determination.  For example, Daniel McAbee testified that Petitioner told him that Petitioner had gotten a ride from a man and had stabbed him [App. 457–58]; Gladfelter testified that Petitioner stabbed the victim [App. 215]; and Inman testified that on the night of the crimes, Petitioner and

35

Gladfelter had hurriedly gathered their possessions and drove away in a maroon car [App. 83–84]. Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and, accordingly, Petitioner is not entitled to habeas corpus relief on this ground.

### Ground 2(b)[17]

In Ground 2(b), Petitioner argues he was denied due process because of prosecutorial misconduct. Petitioner contends that the questions posed to witnesses by the prosecutor were prejudicial because they put Petitioner's character in question when Petitioner had determined he would not take the stand in his own defense in order to preserve his character in the minds of the jury under the Fifth Amendment. Specifically, Petitioner alleges that the prosecutor committed misconduct by soliciting testimony from witnesses regarding Petitioner's outstanding warrants. The Court concludes Petitioner is not entitled to habeas corpus relief based on the allegations raised in this ground.

To prevail on a claim of prosecutorial misconduct, a petitioner must show that the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Here, Petitioner cannot meet this standard. Before trial and on the record, the prosecutor and defense counsel agreed that the prosecutor could refer to Petitioner's outstanding warrants in her examination of the witnesses; however, she could not inquire into the specific charges. [App. 45.] Throughout the 614-page trial transcript, only 50 lines refer

---

[17]Respondent argues that Ground 2(b) has been procedurally defaulted [Doc. 22 at 18], however, the Court finds that the issue was raised in Petitioner's pro se direct appeal [Doc. 22-8 at 4–8]. Accordingly, the Court will address the merits of this ground.

to Petitioner's outstanding warrants [*see* App. 78: 7–14, 99: 11–15, 114: 7–13, 139: 16–25, 140: 1–10, 141: 22–24, 143: 6–10, 162: 7]; even fewer refer to the actual charges. Further, as the PCR court found, there was overwhelming evidence of Petitioner's guilt presented at trial. [*See* App. 83–87 (Inman testified that on the night of the crimes, Petitioner and Gladfelter had hurriedly gathered their possessions and drove away in a maroon car), 214–21 (Gladfelter testified that Petitioner stabbed the victim), 457–58 (testifying witness stated that Petitioner told him that Petitioner had gotten a ride from a man and had stabbed him).] Therefore, under the standard articulated in *Donnelly*, Petitioner has failed to show that the prosecutor's actions resulted in a conviction that was a denial of due process. Thus, the Court concludes the decision of the South Carolina Court of Appeals to affirm Petitioner's conviction was not contrary to or an unreasonable application of applicable Supreme Court precedent, and, accordingly, Petitioner is not entitled to habeas corpus relief on this ground.

### Ground 2(c)

In Ground 2(c), Petitioner argues that the trial court erred by denying a mistrial where character evidence was admitted in violation of Rules 403 and 404, SCRE, and Petitioner's Fifth, Sixth, and Fourteenth Amendment rights when Petitioner chose not to take the stand in order to preserve his character. Respondent argues that this ground was never raised to and ruled upon by the trial court. The Court agrees.

At trial, counsel moved for a mistrial following testimony about how Petitioner broke his hand. [App. 288.] On direct appeal and in the Petitioner, Petitioner asserts that the trial judge erred in failing to grant a mistrial because witnesses testified about his outstanding

warrants.[18] [Docs. 12 at 4–7; 22-6 at 4.] Although this ground was raised on direct appeal, the ground asserted on direct appeal was not the same issue raised to and ruled upon at trial and, accordingly, was not preserved for appellate review. In South Carolina courts, "[i]ssues not properly preserved at trial may not be raised for the first time on appeal." *State v. Vanderbilt*, 340 S.E.2d 543, 544 (S.C. 1986). Thus, the Court concludes the decision of the South Carolina Court of Appeals to affirm Petitioner's conviction was not contrary to or an unreasonable application of applicable Supreme Court precedent where the issue was not presented for appellate review because the motion for mistrial was based on testimony about how Petitioner broke his hand but on appeal, Petitioner argued he should have been granted a mistrial because of testimony about outstanding warrants. Accordingly, Petitioner is not entitled to habeas corpus relief on this ground.

**Ground 5(c)**[19]

In Ground 5(c), Petitioner argues that the trial judge violated his obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), and *United States v. Bagley*, 473 U.S. 667 (1985), by failing to look into or locate Gladfelter's mental health records. However, the obligations imposed in *Brady* and *Bagley* apply to the prosecutor and not the trial judge. Petitioner has not alleged any facts or law that would transfer that responsibility to the trial judge. Thus, the Court concludes the decision of the South Carolina Court of Appeals to affirm Petitioner's conviction was not contrary to or an unreasonable application of applicable

---

[18]Petitioner also raised this issue in his first PCR application. [App. 642–46.]

[19]Respondent argues that Ground 5(c) has been procedurally defaulted; however, upon review, the Court finds that this issue was raised in Issue 2 of Petitioner's pro se direct appeal. Accordingly, the Court will address the merits of this ground.

Supreme Court precedent, and, accordingly, Petitioner is not entitled to habeas corpus relief on this ground.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 13, 2015
Greenville, South Carolina